UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-22796-Civ-GAYLES/TORRES

WILLIAM MUNOZ,

       Petitioner,

v.

UNITED STATES OF AMERICA,

       Respondent.
_____/

**REPORT AND RECOMMENDATION ON MOTION TO
VACATE CRIMINAL CONVICTION**

This matter is before the Court on William Munoz's ("Munoz" or "Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. [D.E. 1]. According to Munoz, he is entitled to § 2255 relief because his trial lawyer, Bruce Lehr, failed to sever his trial from that of co-defendant Jethro Pitts and this amounted to a violation of his right to effective counsel. The Unites States of America (the "Government") filed a Response in Opposition to Munoz's motion [D.E. 6], to which Petitioner replied [D.E. 9]. Therefore, the Motion is ripe for disposition.[1] After careful consideration of the Motion, the record in this case and in the underlying

---

[1] The Honorable Darrin P. Gayles referred the subject motion to the undersigned Magistrate Judge for a Report and Recommendation. [D.E. 10]

criminal proceedings,[2] the relevant authorities, and for the reasons discussed below, Munoz's Motion to Vacate should be **DENIED**.

## I. BACKGROUND

On January 26, 2016, a Grand Jury in this district returned a twelve-count indictment against Munoz and nineteen co-defendants (Crim. D.E. 3). The indictment stemmed from a multi-year investigation into a heroin trafficking operation in Miami, Florida. In general terms, the trafficking operation consisted of two fronts: (i) a supply chain, which included Mexican suppliers and intermediaries who facilitated the movement of heroin into the U.S., and (ii) a distribution chain, which involved street dealers tasked with getting the heroin to its users in Miami. At the center of this operation was Sean Watkins, one of its masterminds, and an important witness in the Government's case against Munoz and co-defendant Jethro Pitts.[3]

The indictment charged Munoz with conspiracy to possess with intent to distribute heroin from approximately April 2014 to December 2015 (Count 1), and

---

[2] Docket entries in the criminal proceedings (Case No. 16-cr-20050) will be referred to as "Crim. D.E." in this ruling.

[3] According to Watkins' testimony, he met his Mexican drug supplier, Joel Diaz-Fernandez, in early 2014, while they were both incarcerated. [Crim. D.E. 443 at 15–16]. There, they made plans to become drug trafficking partners. Soon after his release from prison in early 2015, Watkins visited Diaz-Fernandez in Mexico, where the two materialized their drug trafficking scheme: Diaz-Fernandez and his associates would get the heroin to Atlanta, where Watkins would pick it up to get it shipped to Miami, where he would then sell it to his customers; after selling the heroin in Miami, Watkins would use the drug proceeds to pay the Mexican suppliers in Atlanta. Watkins traveled to Atlanta every ten days or so to pick up new shipments of heroin. *Id.* at 18–24. During one of those trips, on or about August 2015, Watkins was stopped and questioned by law enforcement, leading him to become a cooperating witness in the investigation.

with attempt to possess with intent to distribute heroin on or about December 3, 2015 (Count 12). *Id.* at 2, 9. The indictment also charged Mr. Pitts with one count of conspiracy to possess with intent to distribute heroin from around January 2015 through December 2015 (Count 3). *Id.* Except for Munoz and Mr. Pitts, all remaining eighteen defendants listed in the indictment chose to enter guilty pleas.

Munoz's and Mr. Pitts' trial began on May 8, 2017. During the trial, the prosecution called several witnesses to testify against the defendants, including ATF Special Agent Jason Stankiewicz and co-conspirator Watkins. Among other things, Watkins testified about his heroin distribution efforts in Miami, including his business relationship with Mr. Pitts (one of his Miami customers), and about his dealings with the Mexican suppliers, including his trips to Mexico and his contacts with Munoz (one of Diaz-Fernandez's associates). [Crim. D.E. 443 at 36–79]. The prosecution also introduced several recordings of wiretapped conversations between Watkins and Mr. Pitts, documenting heroin transactions, as well as other surveillance evidence reflecting Munoz's involvement in the heroin trafficking operation. *Id*. at 94–120.

On May 19, 2017, the jury found Munoz guilty of Counts 1 and 12, and Mr. Pitts guilty of Count 3. [Crim. D.E. 374]. On August 16, 2017, the court sentenced Munoz to 188 months' imprisonment and five years' supervised release, and on November 30, 2017, Pitts was sentenced to 78 months' imprisonment and 4 years' supervised release. [Crim. D.E. 427 & 476]. Both defendants appealed to the Eleventh Circuit, but on May 28, 2020, a unanimous panel affirmed their convictions,

holding that substantial evidence supported the jury's verdict. On July 14, 2020, Munoz filed a petition for rehearing *en banc*, which the Eleventh Circuit denied on August 20, 2020. This post-conviction action followed the completion of the criminal action.

## II.  APPLICABE PRINCIPLES AND LAW

### A.  *Section 2255 Standard*

Collateral review is not a substitute for direct appeal; thus, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A movant is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. *Boykin v. United States*, 592 F. App'x 809, 810 (11th Cir. 2014) (citing 28 U.S.C. § 2255). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes cause and actual prejudice from the alleged error, or that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* at 1234. (citations omitted). A claim of ineffective assistance of counsel can constitute

cause if the threshold elements are fully satisfied. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

### B. *Ineffective Assistance of Counsel*

To establish a claim of ineffective assistance of counsel, a petitioner is required to establish two things: "(1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant." *Gordon v. United States*, 518 F.3d 1291, 1297 (11th Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–688 (1984)). Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990); *see also Gallo–Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000) (petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms").

"There is a strong presumption that counsel's performance was reasonable and adequate," which can be overcome only if the petitioner demonstrates that "no competent counsel would have taken the action that his counsel did take." *Gordon*, 518 F.3d at 1301 (citations omitted); *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (petitioner satisfies deficient performance only by proving that counsel "made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment"). The test for reasonableness of performance "is not whether counsel could have done something more or different;

5

instead, we must consider whether the performance fell within the broad range of reasonable assistance at trial." *Stewart v. Sec'y, Dep't of Corr.*, 476 F.3d 1193, 1209 (11th Cir. 2007).

As for the prejudice prong, "[a] petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." *Stewart*, 476 F.3d at 1209 (citation omitted). Indeed, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Cross*, 893 F.2d at 1290. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo–Chamorro*, 233 F.3d at 1303–1304. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted). Thus, the prejudice requirement obliges a petitioner to prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Davis v. Terry*, 465 F.3d 1249, 1255 (11th Cir. 2006) (citation omitted).

### III.   ANALYSIS

Munoz argues that he is entitled to § 2255 relief because the performance of his trial attorney, Mr. Lehr, amounted to a violation of his Sixth Amendment right to effective counsel. [D.E. 1]. Petitioner's theory of relief rests on one single act, or omission, by Mr. Lehr: namely, that he failed to sever Munoz's trial from that of his co-defendant Mr. Pitts, resulting in severe prejudice to Munoz. Specifically, Munoz submits that trying his case jointly with that of Mr. Pitts, who was charged under a

separate conspiracy within the same indictment, enabled the introduction of "irrelevant and unduly prejudicial evidence that would have been inadmissible [had Munoz] been tried separately." *Id*. at 15.

In support of this argument, Munoz posits that his involvement in the drug trafficking operation was *de minimis*, so that the evidence of Mr. Pitts involvement on his side of the trafficking scheme (*i.e.*, the distribution front) substantially outweighed the evidence of Munoz's involvement (*i.e.*, in the Mexican supply front), causing him to be "prejudiced by the spillover effects of the evidence" against his co-defendant. *Id*. at 16, 21. Further, Munoz submits that the court's cautionary instructions to the jury were insufficient to prevent inferences of guilt, jury confusion, and evidentiary prejudice, and that Mr. Lehr's failure to request a special jury instruction added to his ineffective performance. *Id*. 19–20. Thus, Petitioner posits, his conviction should be vacated.

The Government disagrees, noting that Munoz's claim of ineffective assistance fails on its face because any claims of evidentiary prejudice to Munoz are directly refuted by the record in the criminal proceedings, as well as by the Eleventh Circuit's ruling affirming Munoz's conviction. [D.E. 6]. First, the Government argues that Mr. Lehr's performance did not fall below the standard of reasonableness because a Rule 14 motion to sever defendants charged under the same indictment in a drug conspiracy case, such as the one at hand, would likely have been denied. *Id*. at 11, 13. Second, the Government argues that the motion lacks merit because Munoz's allegations that the joint trial resulted in high inferences of wrongdoing, jury

7

confusion, or prejudicial spillover effects are directly belied by the available record and the Court of Appeal's holding. *Id*. 11–13. Among other things, the Government stresses that both the record and the Eleventh Circuit show that the evidence of Pitts' involvement in the distribution conspiracy was easily distinguishable from the evidence against Munoz; that the jury made an individualized determination of guilt as to Mr. Munoz; and that Munoz's role in the drug trafficking scheme was far from minor. Therefore, the Government argues that Munoz's motion for § 2255 relief should be denied without a hearing.

We agree with the Government. Upon careful review of the underlying record, it is evident that Munoz's motion falls short of pleading any colorable claim of prejudice that purportedly resulted from Mr. Lehr's failure to move for a severance of Munoz's trial. Indeed, as the Government rightly points out, the record conclusively shows that Munoz is entitled to no relief, thus, the motion for § 2255 should be Denied.

### A. *The Motion Seeks to Relitigate His Appeal*

As a threshold matter, we note that, despite couching his motion for § 2255 relief on a claim of ineffective assistance of counsel, at its core the motion is an improper attempt to relitigate claims of evidentiary spillover, jury confusion, and evidentiary prejudice that were fully addressed by the Eleventh Circuit's denial of Munoz's direct appeal. Accordingly, the motion could be denied on this basis alone. *See Killen v. United States*, No. 21-10888-E, 2021 WL 7159181, at *5 (11th Cir. Sept. 8, 2021) (affirming § 2255 denial because in the "direct appeal of his current sentence,

8

[petitioner] raised the same [proportionality] claim[.] Thus, he cannot relitigate these claims in his § 2255 motion."); *Knowles v. United States*, 2012 WL 13228385, at *18 (S.D. Fla. Mar. 21, 2012), *report and recommendation adopted*, 2012 WL 13228381 (S.D. Fla. Apr. 12, 2012) (denying § 2255 petition because "to the extent that [petitioner] previously raised any or all of these issues on direct appeal, he cannot relitigate them in the context of this § 2255 proceeding."); *Baldwin v. United States*, No., 2012 WL 5906550, at *6 (N.D. Ga. Sept. 12, 2012), *report and recommendation adopted*, 2012 WL 5903144 (N.D. Ga. Nov. 26, 2012) ("Baldwin may not relitigate in his § 2255 motion matters that were decided against him on direct appeal").

Here, the gravamen of Munoz's ineffective assistance claim is that, by failing to move for a Rule 14 severance, Mr. Lehr subjected the Petitioner to a joint trial wherein the overwhelming evidence against his co-defendant—most of which was irrelevant to Munoz—rendered the jury incapable of making an individualized assessment of guilt as to Munoz. Thus, Petitioner contends, improper inferences of guilt and spillover effects tainted the jury's verdict and materially prejudice him.

Yet, the Eleventh Circuit disposed of near identical evidentiary prejudice claims during Munoz's direct appeal. Here, Munoz's reply misses the mark, *see* [D.E. 9 at 8], because, even if his appeal was not framed in the ineffective assistance of counsel context, the issues before the court in Munoz's variance appeal were virtually the same: (a) "whether the proof at trial differ[s] so greatly from the charges in the indictment [against Munoz]," and (b) "whether there are so many defendants and so many separate conspiracies before the jury that there is a substantial likelihood that

the jury . . . transfer[red] evidence form one conspiracy to a defendant involved in another." *United States v. Munoz*, 816 F. App'x 342, 353 (11th Cir. 2020) (second alteration added).

After reviewing the record, the Eleventh Circuit unequivocally answered both these question in the negative, expressly rejecting the claims of prejudice flowing from purported evidentiary spillover effects. Indeed, the court expressly stated that, "[n]either circumstance exists in this case. Munoz was not charged under the separate conspiracy charge against Pitts [], and evidence of Pitts's activities selling packs of heroin capsules in Miami *was easily distinguishable from the evidence against Munoz.*" *Id*. (emphasis added). Hence the court's concluded that "Munoz fails to show prejudice." *Id*.

Likewise, the Eleventh Circuit also rejected Munoz's corollary allegation that the only evidence produced against him during the criminal proceedings was suggestive of a minimal level of culpability and involvement in the trafficking scheme, an argument that Munoz reasserts in his motion for § 2255 relief:

> Finally, the government presented substantial evidence of Munoz's knowing participation in the conspiracy charged under Count One. Munoz's participation began, at the very latest, in spring 2015 when he began smuggling drug proceeds to Diaz-Fernandez by repeatedly crossing the United States-Mexico border undetected. Munoz was present during price negotiations between Watkins and No Pictures in spring 2015, he wired money to Watkins for the acquisition of a stash house in Miami in November 2015, he played an integral role in the attempted heroin transaction that took place on December 3, 2015, and he reported the events of the foiled drug deal to Diaz-Fernandez, reassuring him that Munoz could be trusted. Far from an unwitting participant, the evidence showed that Munoz had constant contact with Diaz-Fernandez, who trusted him as a confidant and partner in the criminal scheme charged under Count One.

*Id.* In sum, not only are the allegation upon which Munoz bases his motion for § 2255 relief at odds with the Eleventh Circuit's findings, but they are also an improper attempt to recycle claims that the Court of Appeals already decided against him in his direct appeal. Munoz is not permitted to do this, irrespective of whether he now disguises his claims under a theory of ineffective assistance of counsel or under some other basis. *See Moss v. United States*, 2010 U.S. Dist. LEXIS 38648, at *44 (S.D. Fla. Mar. 3, 2010) (observing that a petitioner's attempt to disguise an adverse ruling on direct appeal as an ineffective assistance of counsel claim was impermissible in § 2255 motion); *Bernal v. United States*, 2017 WL 1362685, at *7 (M.D. Fla. Apr. 12, 2017) ("A § 2255 proceeding cannot be used to relitigate questions which were raised and considered on direct appeal"); *Curbelo v. United States*, 2017 WL 1134977, at *2 (M.D. Fla. Mar. 27, 2017) ("If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255.").

### B.   *Munoz Cannot Meet His Burden of Showing Prejudice*

Even if we set aside the fatal flaw in this Petition that seeks to re-litigate issues he raised on direct appeal, Munoz's ineffective assistance of counsel claim still fails on its merits. As we explain below, Munoz's ineffective assistance claim is premised on generic and conclusory allegations of prejudice that are directly contradicted by the available record and are, thus, insufficient to vacate his conviction under § 2255.

As noted earlier, under *Strickland*, Munoz must make a showing that (1) his counsel's performance was deficient, and (2) that the deficiency resulted in prejudice to him. *Strickland*, 466 U.S. at 697. To show prejudice, in turn, Munoz "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

A movant must satisfy both prongs of the *Strickland* test in order to prevail on an ineffective assistance claim. *Strickland*, 466 U.S. at 697. A court deciding an ineffective assistance of counsel claim is not required to address these prongs in any particular order, and if it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id*. *See also Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (courts "are free to dispose of ineffectiveness claims on either of its two grounds"); *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir.1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

Munoz claims that Mr. Lehr's failure to seek severance of his trial from that of Mr. Pitts resulted in severe prejudice to him. Yet, the existing record not only lacks support for this theory, but it actually contradicts any suggestion that the outcome of Munoz's trial would have been any different had he been singularly tried. First, it is clear from the record that the Government proffered substantial evidence directly linking Munoz to the Mexican supply front of the trafficking scheme. Both testimonial

and surveillance evidence supported the jury's finding that, among other things, Munoz (i) had access to marijuana and cocaine; (ii) knowingly participated in the conspiracy to distribute Mexican heroin in Florida; (iii) was present during heroin price negotiations between Watkins and Diaz-Fernandez in Mexico in early 2015; (iv) delivered drug proceeds from U.S. sales to Diaz--Fernandez in Mexico; (v) wired money to Watkins for the down payment of a house intended to serve as a stash house in Miami; (vi) played a central role in the controlled drug transaction that took place on December 3, 2015; and (vii) reported the events of the foiled drug deal to Diaz--Fernandez, while vouching for Watkins' trustworthiness. [Crim. D.E. 443 at 66–69, 95–97, 104–125]; [Crim. D.E. 446 at 37–39]; [Crim. D.E. 449 at 90–99] [Crim. D.E. 458 at 26–30].

Second, Munoz's generic and conclusory allegations that his joint trial with Mr. Pitts led to the introduction of hearsay and unduly prejudicial evidence are likewise belied by the existing record. In fact, the Petitioner does not identify any specific piece of evidence central to the jury's verdict against Munoz, which would have not been admitted had he been tried separately. Indeed, the underlying record reflects that Mr. Lehr's multiple objections during trial to the propriety of certain evidence as to Munoz were devoid of merit. For instance, during Agent Stankiewicz's direct examination, Mr. Lehr raised a hearsay objection to a phone call between Watkins and Diaz-Fernandez, where the pair discussed Munoz's practice of crossing the U.S.-Mexico border undetected to deliver drug proceeds to Diaz-Fernandez there. [Crim. D.E. 446 at 37–39]. After considering argument by the Government that the evidence

13

could come in as either statements of co-conspirators in furtherance of the scheme, or as evidence of knowledge of drug trafficking activity, the district court overruled Mr. Lehr's hearsay objection. *Id*. *See also* [Crim. D.E. 443 at 27–31] (denying motion for mistrial stemming from statement about Watkin's mother's protective custody because this statement was not unduly prejudicial; as the court explained on the record, at no point was it suggested that the need for protective custody was triggered by any of the defendants in trial).

Tellingly, Mr. Munoz's motion fails to cite any pertinent authority that supports the claim that failure to move for Rule 14 severance in a multi-defendant conspiracy case, such as the one at hand, qualifies as ineffective assistance of counsel for the purpose of § 2255 relief. To the contrary, the great weight of authority in our circuit points the other way, especially when, as here, the evidence of record contains indicia of criminality and directly contradicts the petitioner's conclusory allegations. *See Thompson v. United States*, 826 F. App'x 721, 728 (11th Cir. 2020) (failure to sever did not amount to ineffective assistance "[e]ven if [movant] would have had slightly better odds at trial had he been tried alone"); *Hembree v. United States*, 307 F. App'x 412, 416 n.3, 420 (11th Cir. 2009) (failure to sever was not ineffective because "there was substantial evidence presented to the jury establishing that [movant] participated in the conspiracy beyond 1996, so that the jury would have reason to convict [him]"); *Malone v. United States*, 2013 WL 828594, at *3 (M.D. Fla. Mar. 6, 2013) (denying § 2255 premised on failure to sever because "[p]etitioner has not alleged any specifics as to how he was prejudiced," and "the nature of the case itself—

14

a criminal conspiracy—makes it very unlikely that this Court would have granted a severance"); *White v. United States*, 2011 WL 1130882, at *14 (S.D. Ala. Feb. 11, 2011), *report and recommendation adopted*, 2011 WL 1113215 (S.D. Ala. Mar. 24, 2011) ("counsel did not act deficiently in failing to move for a severance," where the "charges were properly joint in the indictment" and the "jury instruction offered sufficient protection against prejudice"); *Howard v. United States*, 2012 WL 2865745, at *6 (M.D. Fla. July 11, 2012) (where the evidence presented at trial is not so antagonistic as to "create undue, compelling prejudice", there is "no ineffective assistance of counsel for failing to seek severance."); *United States v. Beckford*, 2014 WL 6810656, at *8 (N.D. Ga. Dec. 3, 2014) (movant did not show he was prejudiced by joint trial where the record reflected evidence of movant's guilt).

Absent any supporting authority, Munoz relies instead on a portion of the transcript of the oral argument on his appeal before the Eleventh Circuit. [D.E. 1 at 20]. The transcript, to which Petitioner alludes repeatedly, reflects one of the questioning judges' admonishments against jointly trying seemingly distinct conspiracies, noting that such course of action "seems like a mess and a prescription for error." *Id*. However, we find that the persuasiveness of this transcript pales in comparison to the subsequent and unanimous panel decision affirming Munoz's conviction and negating the existence of any evidentiary spillover errors. Indeed as noted earlier that panel had the benefit of surveying the entire underlying record and assessing the nature of the evidence presented to the jury against both defendants. *See Munoz*, 816 F. App'x at 353 ("Munoz fails to show prejudice" because he "was not

charged under the separate conspiracy charge against Pitts under Count Three, and evidence of Pitts's activities selling packs of heroin capsules in Miami was easily distinguished from the evidence against Munoz.").

Lastly, we also find that Munoz's final allegation, that the court's limiting instructions were insufficient to cure any potential prejudice in this case, lacks factual and legal bases. *See Hembree v. United States*, 307 F. App'x 412, 420 (11th Cir. 2009) (failure to object to the court's instructions or the "court's decision to refer the jury back to the [original] jury instructions" in conspiracy case was not ineffective assistance of counsel). As reflected by the record, the trial court instructed the jury to consider each defendant and each offense charged separately. [Crim. D.E. 372 at 19]. Importantly, this court instructed the jury about the multiple defendants and different counts invoked in the indictment and stressed that, "you [the jury] must consider the case of each Defendant separately and individually," and "[i]f you find a Defendant guilty of one crime, that must not affect your verdict for any other crime or any other Defendant." *Id.* Thus, Petitioner's conclusory allegations that Mr. Lehr's reliance on the court's instructions contributed to his professional incompetence are unpersuasive. *See United States v. Strollar*, 10 F.3d 1574, 1578 (11th Cir. 1994) (observing that "'less drastic measures [than separate trials], such as limiting instructions, often will suffice to cure any risk of prejudice'") (quoting *Zafiro*, 506 U.S. 534, 540 (1993)).

In sum, Munoz's request for § 2255 relief should be DENIED. First, the motion seeks to relitigate issues that the Eleventh Circuit already decided against Munoz

during his direct appeal. Second, his claim of ineffective assistance of counsel is based on unsubstantiated and generic allegations of prejudice, which are directly contradicted by the existing record, as well as by the Eleventh Circuit's order affirming his conviction.[4]

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Munoz's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, [D.E. 1], should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; see, e.g., Patton v. Rowell, 2017 WL 443634 (11th Cir. Feb. 2, 2017); Cooley v. Comm'r of Soc. Sec., 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

---

[4] For these same reasons, we hold that Munoz is not entitled to an evidentiary hearing on his § 2255 petition. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("a district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record.") (quotation marks and citation omitted); *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) ("a district court faced with a § 2255 motion may make an order for its summary dismissal '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief....'" (quoting 28 U.S.C. § 2255).

17

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 1st day of November, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge